IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

EVALANI OKAMURA, §
    PLAINTIFF, §
 §
v. § CIVIL ACTION NO. 4:11-CV-872-Y
 §
MICHAEL J. ASTRUE, §
COMMISSIONER OF SOCIAL SECURITY, §
    DEFENDANT. §

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

## FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

Plaintiff Evalani Okamura ("Okamura"), filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("SSA"). In November 2009, Okamura applied for SSI benefits, alleging disability commencing on February 5, 2008. (Tr. 10, 141-43.) After her application for benefits was denied initially and on reconsideration, Okamura requested a hearing before an administrative law judge ("ALJ"). (Tr. 10; see Tr. 56-60, 66-69.) The ALJ held a hearing on August 26, 2010 and issued a decision on September 9, 2010, in which he found that Okamura

1

was not disabled and was not entitled to SSI benefits because she retained the ability to perform several jobs that occurred in significant numbers in the national economy. (Tr. 10-53). The Appeals Council denied Okamura's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1-4.)

## II. STANDARD OF REVIEW

SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA and numerous regulatory provisions. *See* 20 C.F.R. Pt. 416. The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 416.920. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 416.927. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 416.920(f);

*Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley,* 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen,* 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000); *Hollis,* 837 F.2d at 1383.

### III. ISSUES

In her brief, Okamura sets forth, in essence, the following issues:

1. Whether the ALJ erred in determining that Okamura did not meet section 12.10 of the Listing; and

2. Whether the ALJ erred in assessing the credibility of Okamura and her mother, Janet Okamura ("Janet Okamura").

(Plaintiff's Brief ("Pl.'s Br.") at 1.)

## IV. ADMINISTRATIVE RECORD AND ALJ DECISION

In his September 9, 2010 decision, the ALJ found that Okamura had not engaged in substantial gainful activity since November 4, 2009, the date of her SSI application. (Tr. 12.) The ALJ further found that Okamura had the severe impairments of (1) Asperger's disorder, (2) depression, (3) avoidant personality disorder, and (4) passive-aggressive personality traits. (Tr. 12.) Next, the ALJ held that none of Okamura's impairments or combination of impairments met or equaled the severity of any impairment in the Listing, including sections 12.04, 12.08, or 12.10. (Tr. 12.) As to Okamura's physical residual functional capacity ("RFC"), the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she cannot work with the general public, can only have superficial contact with coworkers and supervisors, and is limited to simple work.

(Tr. 13 (emphasis omitted).) The ALJ found that Okamura had no past relevant work. However, based on his RFC assessment, the ALJ held that there were several jobs that existed in significant numbers in the national economy that Okamura could perform. (Tr. 18-19.) Consequently, the ALJ found that Okamura was not disabled. (Tr. 19.)

## V. DISCUSSION

### A. Step Three: Whether Okamura's Impairments Met Section 12.10 of the Listing

Okamura argues, in essence, that the ALJ erred in determining at Step Three that Okamura's impairments did not meet the criteria for section 12.10 of the Listing. (Pl.'s Br. at 12-20; Plaintiff's Reply ("Pl.'s Reply") at 2-3.) Specifically, Okamura citing to *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986) and *Goodley v. Harris*, 608 F.2d 234, 236-37 (5th Cir. 1979), complains that the ALJ erred by failing to even discuss whether the requirements of Part A of section 12.10 were met.

(Pl.'s Br. at 13-14.) In addition, Okamura argues that the ALJ erred in finding that she did not meet the requirements of Part B of section 12.10 because substantial evidence shows that she had marked functioning in at least two of the following areas: (1) daily living; (2) social functioning; or (3) concentration, persistence, and pace. (Pl.'s Br. at 15-19.)

To obtain a disability determination at Step Three, a claimant must show that his impairments meet or equal one of the impairments in the Listing. 20 C.F.R. §§ 416.920(a)(4)(iii), (d). As a threshold matter, the ALJ is responsible for ultimately deciding the legal question whether a listing is met or equaled. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *3 (S.S.A. July 2, 1996). Whether a claimant's impairment meets the requirements of a listed impairment is usually more a question of medical fact than opinion because most of the requirements are objective and simply a matter of documentation, but it is still an issue ultimately reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, at *3 (S.S.A. July 2, 1996). Medical equivalence is found when an impairment "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926.

The claimant has the burden of proving that his impairment or combination of impairments meets or equals a listing. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). "For a claimant to show that his impairment matches [or meets] a listing, it must meet *all* of the specified medical criteria." *Zebley*, 493 U.S. at 530 (emphasis in original). An impairment, no matter how severe, does not qualify if that impairment exhibits only some of the specified criteria. *Id.* The court will find that substantial evidence supports the ALJ's finding at Step Three if the plaintiff fails to demonstrate the specified medical criteria. *Selders*, 914 F.2d at 619-20.

5

"Although it is not always necessary that an ALJ provide an exhaustive discussion of the evidence, bare conclusions, without any explanation for the results reached, may make meaningful judicial review of the Commissioner's final decision impossible." *Inge ex rel. D.J.I. v. Astrue*, No. 7:09-CV-95-O, 2010 WL 2473835, at *9 (N. D. Tex. May 13, 2010) (citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)). However, even assuming the ALJ erred at Step Three by failing to provide reasons for her adverse findings, remand would be necessary only if the claimant's substantial rights have been affected. *Id.*; *see Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected."). To be entitled to relief, the claimant must establish that the ALJ erred and that the ALJ's error casts into doubt the existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

To meet the Listing under section 12.10, which deals with autistic disorder and other pervasive developmental disorders, the claimant must show, as relevant here, that the requirements in both Paragraphs or Parts A and B, listed below, are satisfied:

A. Medically documented findings of the following:

. . . .

2. For other pervasive developmental disorders, both of the following:
   a. Qualitative deficits in reciprocal social interaction; and
   b. Qualitative deficits in verbal and non-verbal communication and in imaginative activity;

AND

B. Resulting in at least two of the following:
   1. Marked restriction of activities of daily living; or
   2. Marked difficulties in maintaining social functioning; or

> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpt. P, App. 1, § 12.10.

In this case, the ALJ specifically found at Step Three that Okamura's impairments did not meet or equal the required criteria for any of the impairments listed under sections 12.04, 12.08 or 12.10 of the Listing. (Tr. 12.) The ALJ, *inter alia*, stated:

> In making this finding, I have considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme . . .
>
> In activities of daily living, the claimant has mild restriction. She cares for her own personal hygiene, helps with laundry and household chores, and can fix herself something to eat. In social functioning, the claimant has moderate difficulties. She attends church activities twice a week, visits with family, neighbors, and a friend, and attends her sister's volleyball games. However, the claimant reported that she has difficulty being corrected, may become argumentative with authority figures, and feels people are picking on her. With regard to concentration, persistence, or pace, the claimant has moderate difficulties. Although the claimant reported difficulty concentrating and remembering, during a mental status examination she remembered 3 of 5 words after a 5-minute interval, remembered 6 digits forward and 3 digits backward, and did serial 7s and 3s. (Exhibits 4E, 10E, and 10F).
>
> As far as episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration. She has not been hospitalized due to her mental impairments and there is no evidence of a temporary increase in signs or symptoms accompanied by a loss of adaptive functioning.
>
> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked limitation" and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

> I have also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria.[1]

(Tr. 13 (footnote added).)

In making such a determination, the ALJ referenced, *inter alia*, the following evidence in the record: (1) a description by claimant's mother, Janet Okamura, in a "Function Report—Adult" dated November 21, 2009 that, with reminders and supervision, Okamura cares for her own personal hygiene; helps with laundry and household chores; cares for her dog; attends church activities twice a week; visits with family and neighbors; and attends her sister's volleyball games (Tr. 13; *see* Tr. 173-80 (Exhibit ("Ex." 4E)); (2) a description by claimant's mother, Janet Okamura, in a "Function Report—Adult" dated March 5, 2010 that, with reminders and supervision, Okamura gets dressed, takes shower in the evening, helps with household chores, takes care of her dog, attends church activities, and plays with neighborhood children (Tr. 13; *see* Tr. 205-212 (Ex. 10E)); (3) a May 14, 2010 Clinical Interview and Mental Status Examination with George R. Mount, Ph.D. ("Dr. Mount")[2] (Tr. 13; *see* Tr. 392-405 (Ex. 10F)); and (4) the fact that Okamura had not been hospitalized due to her mental impairments and there was "no evidence of a temporary increase in signs or symptoms accompanied by a loss of adaptive functioning" (Tr. 13). In addition, the ALJ noted the following in his decision: (1) a June 2009 psychological evaluation in which Steven

---

[1] The Court notes that there are no Paragraph or Part C criteria applicable to section 12.10 of the Listing. *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.10.

[2] In the report, Dr. Mount noted that Okamura reported that she was able to care for her own personal hygiene, help with laundry and household chores, and had problems with concentration and making decisions. (Tr. 393.) In addition, Dr. Mount reported that Okamura remembered 3 of 5 words after a 5-minute interval, remembered 6 digits forward and 3 digits backward, and was able to do serial 7's and 3's. (*Id.*)

8

Greer, Ph.D. ("Dr. Greer"), rated Okamura's Global Assessment of Functioning ("GAF") at 55,[3] "indicating moderate [but not marked] difficulty in social and occupational functioning" (Tr. 15; *see* Tr. 245-50); and 2) a June 8, 2010 examination in which Kristy Chadd, Ph.D. ("Dr. Chadd") diagnosed Okamura with Asperger's disorder and assessed her GAF at 60, indicating moderate [but not marked] symptoms. (Tr. 16; *see* Tr. 430) In addition, the ALJ stated:

> The claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. She cares for her own personal hygiene, helps with laundry and household chores, and cares for her dog. She completed high school and attended TCC for 2 years. The claimant held jobs in the past and there is no evidence that she was fired. She is currently working with DARS and looking for a job, which is inconsistent with her allegation that she is disabled and unable to work. At the hearing, the claimant was asked why she believes she cannot work, but she was unable to give a real reason.

(Tr. 16.)

Okamura argues that the ALJ erred at Step Three because he failed to mention "either the requirements of Part A or any discussion of why Part A" of section 12.10 was or was not met. (Pl.'s Br. at 13.) However, to meet the requirements of section 12.10, the claimant must meet the requirements of *both* Part A and Part B. Because the ALJ found that Okamura did not meet the requirements of Part B of section 12.10, it was not error for the ALJ to fail to discuss whether Okamura met the requirements of Part A.[4] *See, e.g., Martinez v. Chater*, 70 F.3d 1269, 1995 WL 696853, at *5 (5th Cir. Oct. 26, 1995) ("Because the ALJ found that [the claimant] did not meet the

---

[3] A GAF score is a standard measurement of an individual's overall functioning level with respect to psychological, social, and occupational functioning. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994) (DSM-IV). A GAF score of 51 to 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. DSM-IV at 34.

[4] In other words, as long as the ALJ's determination that Okamura did not meet the requirements of Part B of section 12.10 is supported by substantial evidence, any failure by the ALJ in not discussing whether Okamura met the requirements of Part A of section 12.10 would be harmless.

criteria in Part B, the ALJ was correct in determining that organic mental disorders were absent since the criteria in both A and B were not met."); *Charles v. Astrue*, No. 07-1172, 2008 WL 4003651, at *4 (W.D. La. Aug. 7, 2008) ("[T]here is no need to evaluate whether [the claimant] meets one of the requirements set forth in part B (because he does not meet either requirement in part A).")

Okamura also argues, in essence, that the ALJ's decision regarding Part B of section 12.10 is not supported by substantive evidence because "this finding ignores evidence from some of the same exhibits and the remainder of the record" regarding Okamura's ability to perform activities of daily living, social functioning, and concentration, persistence, and pace. (Pl.'s Br. at 15-19.) The focus of Okamura's argument appears to be that the ALJ's determination regarding Part B of section 12.10 is not supported by substantial evidence because the ALJ improperly manipulated, ignored, or omitted certain evidence. (*See, e.g.*, Pl.'s Br. at 15-20.) Although the ALJ's written findings at Step Three are not perfect, the ALJ ultimately determined, after considering all evidence in the record, including the testimony of Okamura and Okamura's mother, that Okamura did not have an impairment or combination of impairments that met or equaled the criteria in, as relevant here, section 12.10.

Procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (stating that ALJ's omission does not require remand unless it affected claimant's substantial rights). Although the ALJ may not have discussed every single medical finding in the record, there is no evidence that, even if the ALJ had discussed every such finding and opinion, the result would be altered. Most, if not all, of the objective medical evidence in the record indicated that Okamura did

not suffer from a *marked* restriction or difficulty in either daily living; social functioning; or maintaining concentration, persistence, or pace, as required to meet Part B of section 12.10. The ALJ's decision is not subject to reversal, even though there may be substantial evidence in the record that would have supported the opposite conclusion, because substantial evidence also supports the conclusion that was reached by the ALJ. *See Dollins v. Astrue*, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997) and *Steed v. Astrue*, 524 F.3d 872, 874 (8th Cir. 2008)). Because there is substantial evidence in the record, as set forth above, that supports the ALJ's determination at Step Three, the Court concludes that remand is not required.

### B. Credibility

Okamura also argues, in essence, that the ALJ's decision regarding the credibility of Okamura and her mother is not based on substantial evidence and contains errors of law. (Pl.'s Br. at 20; Pl.'s Reply at 4-8.) As to the credibility of herself, Okamura claims that the ALJ erred by making a conclusory statement, in violation of SSR 96-7p, that Okamura's statements "concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with [her] residual functional capacity assessment." (Pl.'s Br. at 20; *see* Tr. at 16.) Okamura argues that the ALJ erred by never actually evaluating the intensity, persistence, and limiting effects of Okamura's symptoms "to determine the extent to which the symptoms limit her ability to do basic work activities or give consideration to the entire case record" (Pl.'s Br. at 21) and failed to consider the factors listed in 20 C.F.R. 416.929(c) (Pl.'s Reply at 6-7). Furthermore, Okamura claims that the substantial evidence does not support the ALJ's decision impugning Okamura's credibility. (Pl.'s Br. at 21-23.) As to the credibility of her mother, Okamura argues

11

that the ALJ erred in not giving the testimony and reports of Okamura's mother "great weight" as "she has been Okamura's primary caregiver and teacher for 22 years; her testimony and reports, as conceded in the decision, are extremely consistent with the remainder of the record; and much of her consistent evidence was provided long before Okamura's filing for SSI benefits." (Pl.'s Br. at 24.)

In evaluating a claimant's subjective complaints, the ALJ first considers whether there is a medically determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms. 20 C.F.R. § 416.929; SSR 96-7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996). Once the impairment is found, the ALJ evaluates the intensity, persistence and limiting effects of the symptoms on the claimant's ability to do basic work activities. 20 C.F.R. § 416.929(c); SSR 96-7p, 1996 WL 374186, at *1.

A claimant's statements about pain and other symptoms are not conclusive evidence of disability, but must be accompanied by medical signs and findings of a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged and that would lead to the conclusion that an individual is disabled. 42 U.S.C. § 423(d)(5)(A). A claimant's testimony must be consistent with the objective medical evidence and other available evidence. 20 C.F.R. § 416.929. When assessing the credibility of an individual's statements, the ALJ considers, in addition to the objective medical evidence, the following: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, which the claimant receives or has received for relief of pain or other

symptoms; (6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 CFR § 416.929(c); SSR 96-7p, 1996 WL 374186, at *3.

In addition, pursuant to SSR 06-03p, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006), evidence from "other sources" such as parents may be used to "show the severity of the individual's impairment(s) and how it affects the individual's ability to function." However, information from these other sources "cannot establish the existence of a medically determinable impairment" but "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id.*

"Credibility determinations by an ALJ are entitled to deference." *Alexander v. Comm'r of Soc. Sec. Admin.*, No. 3:07-CV-1749, 2008 WL 4791319, at *12 (N.D. Tex. Oct. 30, 2008) (citing *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991)). "The ALJ is in the best position to assess a claimant's credibility since the ALJ 'enjoys the benefit of perceiving first-hand the claimant at the hearing.'" *Alexander*, 2008 WL 4791319, at *12 (quoting *Falco v. Shalala*, 27 F.3d 160, 164 n.18 (5th Cir. 1994). "Nevertheless, the ALJ's 'determination or decision [regarding credibility] must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Alexander*, 2008 WL 4791319, at *12 (quoting SSR 96-7p, 1996 WL 374186, at *4). Pursuant to SSR 96-7p, "[i]n determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own

13

statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." SSR 96-7p, 1996 WL 374186, at *1. An ALJ's unfavorable credibility evaluation will not be upheld on judicial review where the *un*controverted medical evidence shows a basis for the claimant's complaints unless the ALJ weighs the objective medical evidence and articulates reasons for discrediting the claimant's subjective complaints. *Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir. 1988); *see Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994).

In his decision, the ALJ acknowledged that he had a duty to evaluate the credibility of statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms that are not substantiated by the objective medical evidence. (Tr. 14.) After setting forth the statements Okamura and her mother made at the hearing before the ALJ as well as in other reports and analyzing the objective medical evidence in the record (Tr. 14-18), the ALJ stated:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> . . . .
>
> The claimant has described daily activities which are not limited to the extent one would expect given the complaints of disabling symptoms and limitations. She cares for her own personal hygiene, helps with laundry and household chores, and cares for her dog. She completed high school and attended TCC for 2 years. The claimant held jobs in the past and there is no evidence that she was fired. She is currently working with DARS and looking for a job, which is inconsistent with her allegation that she is disabled and unable to work. At the hearing, the claimant was asked why she believes she cannot work, but she was unable to give a real reason.

14

>The claimant's mother testified that the claimant requires constant supervision for personal care and chores, but her statements cannot be objectively verified with any reasonable degree of certainty. Moreover, it is difficult to attribute such limitations to the claimant's mental impairments, as opposed to other reasons, in view of the medical evidence and other factors discussed in this decision.
>
>. . . .
>
>Per SSR 06-3p, I considered the testimony of the [sic] Janet Okamura, the claimant's mother, and find it is only partially credible. Although her testimony is consistent with other subjective evidence in the record, there is little objective evidence to support her testimony.

(Tr. 16-17).

Contrary to Okamura's claims, the ALJ did make a proper non-conclusory determination as to the credibility of Okamura and her mother, Janet Okamura. The ALJ specifically discussed and explained that Okamura and her mother's subjective statements regarding the intensity, persistence, and limiting effects of Okamura's symptoms only *partially* credible because they were not supported by most of the objective medical evidence in the record. (Tr. 13-18.)

Although the ALJ could have been more precise in setting forth the factors in 20 C.F.R. § 416.929 and SSR 96-7p, it is clear from his decision that he did consider such factors. As stated above, the ALJ specifically acknowledged that he had a duty to consider "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the factors and requirements set forth in 20 CFR [§] 416.929 and SSRs 96-4p and 96-7p." (Tr. 13.) As to factors one and seven of the factors set forth in 20 C.F.R. § 416.929(c) and SSR 96-7p, the ALJ reviewed Okamura's daily activities, noting that Okamura or Okamura's mother testified or reported that Okamura can (with reminders) perform household chores and laundry, care for her own personal hygiene, care for her dog, and fix herself

something to eat. (Tr. 13-18.) In addition, the ALJ acknowledged that Okamura testified that she: (1) sometimes had difficulty answering the phone and taking messages; (2) attends church activities; (3) visits with family and neighbors, and (4) attends her sister's volleyball games. (Tr. 13-18.) As to factors two and three, the ALJ noted, *inter alia*, the following: (1) Okamura could only stand for 45 minutes before her legs became weak; (2) she was easily distracted by her environment and bothered by some smells; and (3) she does not drive because it causes her to become anxious (Tr. 13-18.) As to factor four, the ALJ indicated that Okamura took Synthroid to regulate her hypothyroidism but that such impairment was not severe. (Tr. 12.) As to factors five and six, the ALJ noted that Okamura did not seek medical treatment for her mental disorder until June 2010. (Tr. 16.) Because the ALJ went through the 20 C.F.R. § 416.929(c) factors in evaluating Okamura's credibility and adequately explained the weight he assigned to Okamura's subjective complaints and Janet Okamura's statements based on a thorough review of the other evidence in the record, the Court concludes that the ALJ did not err in evaluating their credibility.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings,

16

conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## **ORDER**

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until **February 18, 2013** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED February 4, 2013.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv